# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **CLAUDIA SMITH, et al,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:09-CV-2046-VEH** |
| | ) |
| **WESTERN SIZZLIN** | ) |
| **CORPORATION, and INVESTORS** | ) |
| **MANAGEMENT, LLC d/b/a** | ) |
| **WESTERN SIZZLIN OXFORD,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION

Before the Court is the Defendants' Motion for Summary Judgment or, in the

Alternative, Motion for Partial Summary Judgment on Plaintiffs' Claims (doc. 28),

filed June 16, 2010.  The Plaintiffs filed a response (doc. 32) on July 7, 2010, and

Defendants filed a reply (doc. 33) on July 16, 2010.  For the reasons set forth below,

the motion is due to be **GRANTED** in part and **DENIED** in part.[1]

## PROCEDURAL BACKGROUND

The Plaintiffs initially filed their complaint in the Circuit Court of Calhoun

---

[1] The Defendants' motion for summary judgment is denied only on Plaintiffs' breach of contract claim, regarding their unfinished meals, against Western Sizzlin Oxford.  The motion is granted on all other claims.

County, Alabama, on September 11, 2009.  (Compl., Ex. B, Notice of Removal, doc.

1-2, filed Oct. 14, 2009).  The Defendants, Western Sizzlin Corporation and Investors

Management, LLC, doing business as Western Sizzlin Oxford (hereinafter "Western

Sizzlin Oxford"), removed the case to this court on October 14, 2009.  (Notice of

Removal, doc. 1, filed Oct. 14, 2009).  On April 14, 2010, the Plaintiffs filed their

First Amended Complaint.  (First Am. Compl., doc. 18, filed April 14, 2010).  In their

amended complaint, the Plaintiffs assert claims of breach of contract, race

discrimination in violation of 42 U.S.C. § 1981, intentional infliction of emotional

distress, negligent supervision and negligent training, and false imprisonment.  In

addition, all of the Plaintiffs except Keaton Williams assert a claim of libel.  Lastly,

Plaintiff DeVion Smith asserts a claim of disability discrimination under 42 U.S.C.

§ 12101.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023

(11th Cir. 2000).  The party asking for summary judgment always bears the initial

2

responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See, e.g., Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See, e.g., Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real*

*Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial.  *See Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it requires the movant to point out

4

to the court that there is an absence of evidence to support the non-moving party's case.  *See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## FACTUAL BACKGROUND[2]

In or around early September 2008, the Plaintiffs were planning a baby shower for Plaintiff Temecha Boseman, who was pregnant at the time with Plaintiff Keaton Williams.  (First Am. Compl., doc. 18, § 28; Dep. of Boseman, Ex. E, doc. 30-5, p.

---

[2]Keeping in mind that, when deciding a motion for summary judgment, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts.  *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party).  This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

25:16-19).   Plaintiff LaCrysta Scott contacted the Western Sizzlin in Oxford, Alabama, to see if that restaurant could accommodate the shower.  (Dep. of Scott, Ex. K, doc. 30-11, p. 17:2-7).   Scott had previously contacted O'Charley's, but O'Charley's could not provide a private room for the shower.  (Dep. of Scott, Ex. K, doc. 30-11, p. 17:16-20).  Scott scheduled the shower at Western Sizzlin Oxford because the private room was available.[3]  (Dep. of Scott, Ex. K, doc. 30-11, p. 17:2-23, 18:1-2).   The room was reserved from 2:00 until 5:00 p.m. on Saturday, September 13, 2008, with the party beginning at 3:00.  (AF 25).[4]  Scott reserved the room for an extra hour to allow time for decorating the room for the party.  (Dep. of Scott, Ex. K, doc. 30-11, p. 30:20-21, 31:15-32:16; Dep. of White, Ex. J, doc. 30-10, p. 42:13-23; Dep. of Boseman, Ex. E, doc. 30-5, p. 18:18-19:4).

On September 13, 2008, Scott and Plaintiff LaKisha White arrived at the

---

[3]Plaintiff Temecha Boseman stated that she made the reservation with Western Sizzlin in Oxford.  (Dep. of Boseman, Ex. E, doc. 30-5, p. 17:15-17).  For purposes of this motion, the person who made the reservation is not relevant.

[4] The Plaintiffs have indicated that they admit certain facts from Defendants' Statement of Undisputed Relevant Material Facts.  (*See, e.g.*, Pls.' Resp. to Defs.' Mot. for Summ. J., doc. 32, ¶ 22).  These facts are referred to herein as "admitted facts," or as "AF," and refer to the Defendants' Statement of Undisputed Relevant Material Facts set forth in the Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, document 29, filed on June 16, 2010.  The Plaintiffs have also indicated that they "have no facts which dispute" certain facts in Defendants' Statement of Undisputed Relevant Material Facts.  (*See, e.g.*, Pls.' Resp., doc. 32, ¶ 1).  These facts are referred to herein as "undisputed facts," and likewise refer to the Defendants' Statement of Undisputed Relevant Material Facts set forth in the Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

Western Sizzlin Oxford "between 2:00 and 2:30 p.m. to decorate for the party." (AF 27). Scott and White were greeted by a "white hostess who showed them to the room in which the party was to be held." (AF 28). The room in which the party was held "can accommodate in excess of 72 customers." (AF 29). A white waitress helped Scott and White set up the room for the party. (AF 31). After decorating the room, Scott and White placed an order and paid for their buffet meals. (AF 32). According to Scott, she "didn't think [the meal] was more than $8.00 and some change." (Dep. of Scott, Ex. K, doc. 30-11, p. 35:8-10). "Party guests began arriving about 20-30 minutes later." (AF 33). "One of the 15 party guests was 11-year-old [Plaintiff] DeVion Smith." (AF 34). "Plaintiffs believe that DeVion Smith suffers from a disability, but did not communicate this belief to [Western Sizzlin] Oxford, its managers or employees." (AF 35). Western Sizzlin Oxford treated Smith "the same as all other Plaintiffs." (AF 36). "At some point, Plaintiffs' original waitress went off duty and was replaced by two other waitresses." (AF 37). "These new waitresses, both white females, were Sonya Parker and Dale Anderson." (AF 38). All of the Plaintiffs, "with the exception of then nine (9) month old Kahlee Jenkins and unborn Keaton Williams, each placed a food order from the menu or ordered the buffet." (AF 39). The Plaintiffs ate at least a portion of their meals. (Resp. to Reqs. for Admis., Exs. M1 to M16, doc. 30-13, ¶¶ 2 - 3).

At some point during the party, Scott and White noticed that customers other that those attending the shower were being seated in the room with them.  (AF 42).  Scott asked one of the waitresses why other customers were being seated in the private room that was reserved for the baby shower.  (Dep. of Scott, Ex. K, doc. 30-11, p. 52:4-9).  The waitress told Scott that she "would get someone or find out what was going on."  (AF 46).  The manager of the restaurant, Kenneth Phillips, came to the room "in response to Ms. Scott's inquiry and explained that their reservation was not for a private room."  (AF 47).  Phillips then left the room.  (AF 49).  Scott asked for a phone number to call so that she could speak to someone above Phillips "about his handling of their request for a private party room."  (AF 50).  Phillips returned to the room and initially told Scott that there was no number to call.  He finally relented and gave her a toll-free number to call.  (Dep. of Scott, Ex. K, doc. 30-11, p. 61:7-14; Dep. of Boseman, Ex. E, doc. 30-5, p. 75:13 -76:4).  Scott began calling the number provided by Phillips.  (AF 52).

Phillips left the room after giving Scott the phone number.  Soon afterward, the waitresses, Parker and Anderson, "overheard one of the baby shower guests make a comment to the effect that if he came back again, they would stab him and make it look like he ran into the knife."  (Defs.' Br., doc. 29, ¶ 53, *citing* Decl. of Parker, Ex. G, doc. 30-7, ¶ 5; Decl. of Anderson, Ex. H, doc. 30-8, ¶ 5).  Both Parker and

Anderson believed that the comment was referring to Phillips because the comment was made shortly after his conversation with Scott. They were both concerned for the safety of Phillips because "the comment was not made in a joking manner." (Defs.' Br., doc. 29, ¶ 55, *citing* Decl. of Parker, Ex. G, doc. 30-7, ¶¶ 6-7; Decl. of Anderson, Ex. H, doc. 30-8, ¶¶ 6-7). They immediately reported the comment to Phillips, who called the Oxford Police Department and reported the threat. (Dep. of Phillips, Ex. C, doc. 30-3, pp. 82:11-22, 86:7-21). Soon after the call to the Oxford Police Department, two police officers arrived and told the shower guests to leave because someone had complained about disorderly conduct. (Dep. of Smith, Ex. I, doc. 30-9, p. 63:1-16; Dep. of Scott, Ex. K, doc. 30-11, p. 87:8-14). Several of the Plaintiffs stated that since they did not get to finish their meal, they were not going to pay. (AF 60). One of the police officers responded that if they didn't pay for their meal and gratuity, they would be taken to jail. (Dep. of Smith, Ex. I, doc. 30-9, p. 64:4-10; Dep. of Scott, Ex. K, doc. 30-11, p. 83:4-9). Scott and White, who had already paid for their meals, took down the decorations and "gathered [] the gifts and cake while the other party guests paid for their meals." (AF 62). "Plaintiffs did not hear any manager or employee of [Western Sizzlin] Oxford make any racially derogatory comments." (AF 65).

After the baby shower, Scott continued trying to call the number that Phillips

gave her.  Those calls went to a fax machine.  (AF 68).  She was later able to reach Janet O'Neal at the number.  (AF 69).  O'Neal told Scott that she would have the owner, Bill Folsom, return her call.  (AF 70).  Folsom called Scott soon "thereafter, apologized to her, and told her that this was not the way they do business."  (AF 71). "That same week, Mr. Folsom sent [Plaintiff] Scott a letter containing both another apology and a $100 check."  (AF 73).  Scott returned the check uncashed.  (AF 74). "It was only after Mr. Folsom sent the $100 check that he learned of the threat to Mr. Phillips overheard by Ms. Anderson and Ms. Parker."  (AF 75).  Several of the Plaintiffs met with the Oxford Chief of Police the week after the baby shower. "During that meeting, the Plaintiffs in attendance were told about the call placed by the [Western Sizzlin] Oxford restaurant to the [Oxford Police Department] reporting a threat to cut the manager with a knife."  (AF 77).  Plaintiffs White and Smith agreed "that a restaurant customer making a threat about cutting or using a knife on somebody would be a serious matter and that it would be appropriate for the restaurant to get the police involved."  (AF 78).

The Western Sizzlin restaurant in Oxford is owned by Defendant Investors Management, LLC.  (Undisputed fact 1).  William Folsom and his wife are the sole shareholders of Investors Management, LLC.  (Undisputed fact 2).  "Investors Management, LLC has the franchise rights for the Western Sizzlin in Oxford,

Alabama." (Undisputed fact 3). The franchise agreement provides in pertinent part as follows:

> This Agreement does not constitute Franchisee as an agent, legal representative, joint venturer, partner, employee or servant of Franchisor for any purpose whatsoever. Franchisee may not represent to third parties that it is an agent of Franchisor and it is understood between the parties hereto that Franchisee shall be an independent contractor and is in no way authorized to make any contract, agreement, warranty or representation on behalf of Franchisor, or to create any obligation, express or implied, on behalf of Franchisor.

(Ex. A, ¶ 3, and Ex. A att. thereto, § XXII.A.). "Folsom was previously employed by [Western Sizzlin Corporation] in several capacities, such as consultant, Director of Operations, and Vice-President of Operations." (Undisputed fact 8). At no time during his ownership of the Western Sizzlin Oxford has Folsom been employed by Western Sizzlin Corporation. (Undisputed fact 11). "Kenneth Phillips is employed by [Western Sizzlin] Oxford as general manager." (Undisputed fact 7).

Western Sizzlin Corporation "does not provide training to or otherwise supervise the day-to-day operations of the Western Sizzlin franchise restaurants owned and operated by Mr. Folsom, including the Western Sizzlin restaurant located in Oxford, [Alabama]." (Ex. D, Decl. of Jerry Plunkett, doc 30-4, ¶ 6). "Western Sizzlin Corporation was in no way involved with nor did it have knowledge of the baby shower made the subject of Plaintiffs' Complaint." (Ex. D, doc. 30-4 ¶ 10).

11

## DISCUSSION

**I.     Claims of Plaintiff Keaton Williams:**

The Defendants contend that Plaintiff Keaton Williams, who was unborn at the time of the baby shower on September 13, 2008, does not have standing to bring his claims.   According to the Defendants, "Keaton Williams . . . could not have contracted with either Defendant or suffered any injury-in-fact." (Defs.' Br., doc. 29, p. 18).   Therefore, Defendants contend that he lacks standing and his claims must be dismissed.

The Plaintiffs contend that the baby shower was held in honor of Keaton Williams, and that the Defendants were "put on notice that there would be a guest of honor, yet unborn, who would be eating with his mother." (Pls.' Resp. to Defs.' Mot. for Summ. J., doc. 32, p. 30).   The Plaintiffs complain that the Defendants did not offer to "comp" the meal. (Pls.' Resp., doc. 32, p. 30).   According to the Plaintiffs, Keaton Williams was born earlier than expected, and that Keaton Williams's mother believes that his early delivery was due to the stress on September 13, 2008.

"'[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.'" *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (citations omitted). "'In essence the question of standing is whether the litigant is entitled to have the court decide the

merits of the dispute or of particular issues.'" *Bochese*, 405 F.3d at 974. "Standing is a doctrine that 'stems directly from Article III's "case or controversy" requirement,' and thus it 'implicates our subject matter jurisdiction.'" *Bochese*, at 974. (citations omitted). "In fact, standing is 'perhaps the most important' jurisdictional doctrine, and, as with any jurisdictional requisite, [the court is] powerless to hear a case when it is lacking." *Id.* (citations omitted).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) (citations omitted).

"Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressibility." *Dermer v. Miami-Dade County*, 599 F.3d 1217, 1220 (11th Cir. 2010), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "'But the "injury in fact" test requires more than an injury to a cognizable interest. It requires that the party seeking

13

review be himself among the injured.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992), *quoting Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972). "'[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal,' *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); it 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.'" *Mulhall v. UNITE HERE Local 355*, ___ F.3d ____, 2010 WL 3526078, *3 (11th Cir.  Sept. 10, 2010), *citing Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

In this case, Plaintiff Keaton Williams asserts claims of breach of contract, race discrimination under 42 U.S.C. § 1981, intentional infliction of emotional distress, negligent supervision and negligent training, and false imprisonment.  Plaintiff Williams was an unborn child at the time of the events giving rise to his claims.  The only allegation of a potential injury to Plaintiff Williams is his mother's assertion that he was born early due to the stress of the event on September 13, 2008.  Even assuming that an early delivery may be an injury sufficient for standing purposes, the Plaintiffs have not provided any evidence supporting their contention that such injury was caused by the incident giving rise to these claims.  By failing to provide any evidence of an injury to Plaintiff Williams or of causation, the Plaintiffs have failed

to show the existence of a material fact question on the issue of whether Plaintiff Keaton Williams has standing to pursue his claims.  Accordingly, the Defendants' motion for summary judgment is due to be **GRANTED** as to all claims of Plaintiff Keaton Williams.  Further, any reference hereafter in this Memorandum Opinion to "Plaintiffs" does not include Plaintiff Keaton Williams.

## II.     Plaintiff DeVion Smith's Claim under Title III of the ADA:

The Defendants contend that Plaintiff DeVion Smith lacks standing to pursue a disability claim.  According to the Defendants, Smith's remedies "are limited to injunctive relief and attorney's fees and costs." (Defs.' Br., doc. 29, pp. 30-31).  The Defendants contend that because Smith has not offered any evidence that he intends to return to the restaurant, he cannot show an immediate threat of discrimination.  The Defendants also contend that even if Smith could show standing, he cannot establish a prima facie case of discrimination because Smith, along with the other Plaintiffs, has confirmed "that Mr. Smith was treated by Defendant [Western Sizzlin] Oxford the same as all other Plaintiffs."  (Defs.' Br., doc. 29, p. 32.)

In their response, the Plaintiffs stated that Smith's "mother would take him back to Western Sizzlin if there was a reliable assurance that he would not be subjected to armed police ejection even though he was well mannered and polite." (Pls.' Resp., doc. 32, p. 29).

"A plaintiff must demonstrate three things to establish standing under Article III.  First, he must show that he has suffered an 'injury-in-fact.'" *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "Second, the plaintiff must demonstrate a causal connection between the asserted injury-in-fact and the challenged action of the defendant." *Shotz*, 256 F.3d at 1081, *citing Lujan*, 504 U.S. at 560.  "Third, the plaintiff must show that 'the injury will be redressed by a favorable decision.'" *Shotz*, at 1081, *citing Lujan*, at 561 (citations and internal quotations omitted).  "In addition, '[b]ecause injunctions[5] regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury.'" *Id.*, *quoting Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1284 (11th Cir.2001).  "In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." *Id.* (citations omitted). Thus, absent an allegation that the plaintiffs have attempted to return, or that they

---

[5]As correctly noted by the Defendants, "[o]nly injunctive and declaratory relief is available to private litigants who bring suit under [Title III]."  *Raetano v. Kally K's, Inc.*, No. 808-cv-02104-T-17-TGW, 2009 WL 651808 at *3 (M.D. Fla. March 12, 2009), *citing Ass'n for Disabled Americans, Inc. v. Concorde Gaming Corp.*, 158 F. Supp.2d 1353, 1359 (S.D. Fla. 2001).

16

intend to do so in the future, "the likelihood of future discrimination remains 'conjectural, hypothetical, or contingent,' and not 'real and immediate.'" *Id.* at 1082, *citing Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir.1985).  And, as discussed above, the plaintiff "can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*,  504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) (citations omitted).

    In this case, Plaintiff Smith has not provided any evidence that he attempted to return to Western Sizzlin Oxford, or that he intends to do so.  The statement in Plaintiffs' response that the Plaintiff's "mother would take him back to Western Sizzlin if there was a reliable assurance that he would not be subjected to armed police ejection" does not meet the burden of showing a real and immediate, as opposed to a merely conjectural or hypothetical, threat of future injury.  Moreover, a mere allegation is not sufficient for purposes of a motion for summary judgment. The Plaintiffs have failed to provide any evidence to show the existence of a material fact question on the issue of whether Plaintiff DeVion Smith has Article III standing to pursue a Title III claim.  Accordingly, the Defendants' motion for summary judgment is due to be **GRANTED** on this claim.

17

Even assuming Plaintiff DeVion Smith has standing to pursue his claim, he cannot establish a prima facie case.   "[T]o establish a prima facie case of discrimination under Title III of the ADA a plaintiff must show: (1) that he is a qualified individual with a disability; (2) that he was discriminated against in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation; and (3) that the discrimination was on the basis of his disability." *Louie v. Nat'l Football League*, 185 F. Supp. 2d 1306, 1308 (S.D. Fla. 2002) (citations omitted).  In the complaint, the Plaintiffs allege that Plaintiff DeVion Smith "was not allowed the public accommodation of consuming his meals on the premises of Defendant corporation's restaurant, though he was required to pay for both his unfinished food and unrendered service, when other non-disabled patrons that day were allowed [to] consume meals and afforded service on the premises of the Defendant corporation's restaurant. . . .  The defendants, separately and severally, were reckless and indifferent to their treatment of children and of disabled children."  (Pls.' First Am. Compl., doc. 18, ¶ 85, filed April 14, 2010).

Again, the Plaintiffs have only provided allegations, not evidence, to support this claim.  The Plaintiffs have failed to provide any evidence that supports an inference that Plaintiff DeVion Smith was discriminated against in the full and equal

enjoyment of the goods and services provided by the Western Sizzlin Oxford.   The

Plaintiffs admitted that Plaintiff DeVion Smith "was treated by Defendant W. S.

Oxford the same as all other Plaintiffs."  (AF 36).   Thus, the evidence provided

supports an inference that he was not treated differently than non-disabled customers.

In addition, the Plaintiffs have failed to provide any evidence that the alleged

discrimination was based upon Plaintiff DeVion Smith's alleged disability.  For these

reasons, Plaintiff DeVion Smith cannot establish a *prima facie* case of discrimination.

Accordingly, the Defendants' motion for summary judgment on this claim is due to

be **GRANTED**.

## III.   **Claims Against Western Sizzlin Corporation:**

The Defendants contend that the Plaintiffs have failed to provide any evidence

to support their breach of contract claims against Western Sizzlin Corporation.  In

addition, the Defendants contend that Western Sizzlin Corporation is not liable for

any contract of Western Sizzlin Oxford.  The Defendants note that the undisputed

evidence shows that Western Sizzlin Corporation "does not train, supervise or in any

way control the day-to-day operations of [Western Sizzlin] Oxford.  (Defs.' Br., doc.

29, p. 20 filed June 16, 2010).  The Defendants also point out that the Plaintiffs rely

entirely upon the dissenting opinion of *Kennedy v. Western Sizzlin Corp.*, 857 So.2d

71 (Ala. 2003), to support their breach of contract claims against Western Sizzlin

Corporation.

According to the Plaintiffs, Western Sizzlin Corporation supplies "a confidential operations manual to franchisees," which includes "[s]tandards for management and personnel." (Pls.' Resp., doc. 32, p. 25). In addition, Western Sizzlin Corporation "requires or waives manager training." (Pls.' Resp., doc. 32, p. 26). The Plaintiffs also note that Kenneth Phillips, the general manager, testified "that he has never received any training whatsoever by manual or video from [Western Sizzlin Corporation]." (Pls.' Resp, doc. 32, p. 26). The Plaintiffs ostensibly contend that by providing an operations manual to Western Sizzlin Oxford, and by waiving any training for Phillips, that the Western Sizzlin Corporation retained sufficient control over Western Sizzlin Oxford to be held liable for the acts of Western Sizzlin Oxford. The Plaintiffs rely upon the concurring and dissenting opinions in *Kennedy v. Western Sizzlin Corp.*, 857 So.2d 71 (Ala. 2003).

The Plaintiffs have clearly failed to identify a contract between them and Western Sizzlin Corporation. For this reason, the Defendant Western Sizzlin Corporation is entitled to summary judgment on the Plaintiffs' breach of contract claims to the extent that the Plaintiffs claim that a contract existed between them and the Plaintiffs.

The Plaintiffs also claim that Western Sizzlin Corporation may be held liable

20

for breach of the contract between the Plaintiffs and the Defendant Western Sizzlin

Oxford based upon the Franchise Agreement between Western Sizzlin Corporation

and Western Sizzlin Oxford.  "A franchise agreement, without more does not make

the franchisee an agent of the franchisor." *Kennedy*, 857 So.2d at 77, *citing Carlton*

*v. Ala. Dairy Queen, Inc.*, 529 So.2d 921, 924 (Ala. 1988).  "[T]he test for

determining whether an agency relationship exists is 'whether the alleged principal

reserved a right of control over the manner of the alleged agent's performance.'"

*Kennedy*, at 77, *quoting Wood v. Shell Oil*, 495 So.2d 1034, 1036 (Ala. 1986).

"However, '[t]he retained right to supervise the alleged agent to determine if that

person conforms to the performance required by a contract with the asserted principal

does not , itself, establish control.'" *Id.*, *quoting Wood*, 495 So.2d at 1036.  Although

the issue of agency is "a question of fact to be determined by the trier of fact," agency

may not be presumed; "'the party asserting it has the burden of adducing [substantial]

evidence to prove its existence.'"  *Id.*, *quoting Wood*, at 1035-36.  In addition,

"[a]pparent authority is inferred from the conduct of the principal.  That is, it is

authority that 'the principal has held out the agent as possessing, or which he has

permitted the agent to represent that he possesses.'" *Id.* (citations omitted).

In this case, the Plaintiffs have provided no evidence of the existence of an

agency relationship, actual or apparent, between Western Sizzlin Corporation and

Western Sizzlin Oxford.  In fact, the evidence in the record shows otherwise.  The Franchise Agreement explicitly states that the agreement does not constitute the Franchisee as an agent of the Franchisor for any reason.  (Ex. A, att. to Ex. A, Defs.' Evidentiary Submission, doc. 30, § XXII.A.).  In addition, the evidence indicates that Western Sizzlin Corporation does not supervise the day-to-day operations of Western Sizzlin Oxford.  (Ex. D, Decl. of Jerry Plunkett, doc. 30-4, ¶ 6).  Because the Plaintiffs have offered no evidence supporting their claim of an agency relationship, the court concludes that there is no genuine issue as to a material fact on the issue of an agency relationship  between Western Sizzlin Corporation and Western Sizzlin Oxford.  For this reason, the motion of the Defendant, Western Sizzlin Corporation, for summary judgment on Plaintiffs' breach of contract claims is due to be **GRANTED.**

## IV.    Race Discrimination Claim Pursuant to 42 U.S.C. § 1981:

The Defendants contend that they are entitled to summary judgment on Plaintiffs' claims for a number of reasons.  First, Western Sizzlin Corporation contends that it is entitled to summary judgment because the Plaintiffs did not attempt to or have a contractual relationship with it.  Second, Western Sizzlin Oxford contends that the Plaintiffs cannot establish a prima facie case.  Western Sizzlin Oxford also contends that it had a legitimate nondiscriminatory reason for its actions.

In addition, the Defendants contend that the Plaintiffs cannot show pretext.

The Plaintiffs contend as follows:

> The Plaintiffs attended the shower on September 13, 2008.  Each one of them ordered a meal with the exception of Keaton Williams who was yet unborn.  Each person who ordered a meal paid for the meal.  None of the plaintiffs who ordered a meal finished the meal before being required to leave the restaurant by the police.

> Plaintiffs created a contract for a private room and for a meal. . . .

> . . . .

> None of the plaintiffs were permitted to finish their meals.  All of the plaintiffs who were served meals paid for them though they did not have the opportunity to finish them.

(Pls.' Resp., doc. 32, p. 18, filed July 7, 2010).

"The elements of a cause of action under § 1981 are '(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute.'" *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007), *quoting Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004) (citation omitted).  "Thus, to survive summary judgment, [the plaintiffs] must identify a genuine issue of material fact as to each element." *Kinnon*, 490 F.3d at 891.  "In cases where a plaintiff has no direct evidence of discrimination, courts generally use the burden shifting scheme set forth by the Supreme Court in

23

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Jackson v. Waffle House, Inc.*, 413 F. Supp. 2d 1338, 1355 (N.D. Ga. 2006). "In the context of a § 1981 claim, a plaintiff establishes a *prima facie* case of discrimination by producing sufficient evidence that: (1) the individual is a member of a protected class; (2) the allegedly discriminatory conduct concerned one or more of the activities enumerated in the statute, i.e., the making performance, modification, or termination of contracts, or the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship; and (3) the defendant treated the plaintiff less favorably with regard to the allegedly discriminatory act than it treated other similarly-situated persons outside of the individual's protected class." *Jackson*, 413 F. Supp. 2d at 1355, *citing Benton v. Cousins Properties, Inc.*, 230 F.Supp.2d 1351, 1370 (N.D. Ga. 2002).

As determined above, in section III, the Plaintiffs have provided no evidence of a contract between the Plaintiffs and Defendant Western Sizzlin Corporation. The Plaintiffs have also failed to provide any evidence that tends to show that an agency relationship existed between Western Sizzlin Corporation and Western Sizzlin Oxford. For these reasons, the motion of Defendant Western Sizzlin Corporation for summary judgment on Plaintiffs' 1981 claims is due to be **GRANTED**.

In this case, the Plaintiffs can establish the first two prongs of the test. First,

the Plaintiffs are members of a protected class because they are all African-American. The second prong requires the Plaintiffs to "demonstrate the loss of an actual . . . contract interest.'" *Kinnon*, 490 F.3d at 892, *quoting Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003).  The Plaintiffs have demonstrated such a loss based upon the undisputed fact that many of the Plaintiffs were not allowed to finish the meals that they purchased from Western Sizzlin Oxford.

"[T]he third prong of a § 1981 claim requires a plaintiff to show an apt comparator of a different race who was not subjected to the same harsh treatment with regard to the enforcement of a contract as was the plaintiff." *Jackson*, at 1355.  In addition, "a valid comparator requires [a customer] who is 'similarly situated in all relevant aspects.'" *Melton v. Nat'l Dairy LLC*, 705 F. Supp. 2d 1303, 1318 (M.D. Ala. 2010), *citing Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

In this case, the Plaintiffs contend as follows regarding their white comparators:

> The Plaintiffs were seated in Room 4.  All of the individuals who were seated in Room 4 who were not in the baby shower were white.  No white person seated in Room 4 was asked to leave or even approached by the police. All the black people in Room 4 were asked to leave.  Black people in Room 4 who were behaving just like white people were not permitted to enjoy their meals but were ejected with police escorts.

(Pls.' Resp., doc. 32, p. 22, filed July 7, 2010).  The Plaintiffs have not provided any

evidence that tends to show that employees of Western Sizzlin Oxford asked persons outside the Plaintiffs' protected class to leave under similar circumstances of the day in question, i.e., for threatening to stab the manager.  Because the Plaintiffs have failed to produce any evidence that similarly situated white individuals were treated more favorably than the Plaintiffs, the Plaintiffs cannot establish a *prima facie* case of discrimination.

Even assuming that the Plaintiffs could establish a *prima facie* case of discrimination, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *See Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).  "At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is 'merely one of production, not proof.'" *Perryman*, 698 F.2d at 1142, *quoting* Lee, 684 F.2d at 773.  The Defendant contends that two waitresses reported to the manager that they overheard a threat  to stab the manager, and the manager reported that threat to the police.  By proffering this statement, the Defendant has articulated a legitimate, nondiscriminatory reason for its action in calling the police.

"Once the defendant has rebutted the plaintiff's prima facie case, the plaintiff

must carry his or her ultimate burden of establishing by a preponderance of the evidence that a discriminatory intent motivated the employer's action." *Perryman*, at 1142, *quoting McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. "The plaintiff may accomplish this indirectly by showing that the employer's proffered explanation is pretextual, or directly by showing that a discriminatory reason more likely motivated the employer's action." *Id.*, *quoting Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). "[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." *Jackson v. Waffle House, Inc.*, 413 F. Supp. 2d 1338, 1363-65 (N.D. Ga. 2006), *quoting St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (emphasis in the original). The Plaintiffs have failed to provide any evidence that the Defendant's reason for calling the police to report the threat was false or that the real reason was the Plaintiffs' race. For this reason, the motion of Defendant Western Sizzlin Oxford for summary judgment is due to be **GRANTED** on the Plaintiffs' § 1981 claims.

## V.   Breach of Contract Claims Against Western Sizzlin Oxford:[6]

---

[6]As the court determined above in Section III., Defendant Western Sizzlin Corporation is entitled to summary judgment on all of Plaintiffs' breach of contract claims.

## A.    Contract for the Plaintiffs' Meals:

Defendant Western Sizzlin Oxford contends that with regard to the Plaintiffs'
breach of contract claims for unfinished meals, the Plaintiffs have suffered no
damages for which Western Sizzlin Oxford "has not already compensated them."
(Defs.' Br., doc. 29, p. 23).  According to the Defendant, the owner of the Western
Sizzlin Oxford, Bill Folsom, sent a check to Plaintiffs Scott for $100, along with an
apology.   Although Plaintiff Scott returned the check uncashed, the Defendant
contends that the Plaintiffs "should not be allowed to pursue this claim simply
because they voluntarily elected to discard that compensation." (Defs.' Br., doc. 29,
p. 23).  In addition, the Defendant contends that the Plaintiffs have failed to provide
any evidence of damages, and therefore, the Plaintiffs cannot prevail on their claims.

The Plaintiffs contend that they each purchased a meal from the Western
Sizzlin Oxford, and therefore, each had a contract.  They were not permitted to finish
their meals.  They therefore claim that the Defendant is liable for breach of contract.

"The elements of a breach-of-contract claim under Alabama law are (1) a valid
contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the
defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v.
Hill*, 825 So.2d 100, 105-06 (Ala. 2002), *citing State Farm Fire & Cas. Co. v. Slade*,
747 So.2d 293, 303 (Ala. 1999).  "'The requisite elements of [a contract] include: an

offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.'" *Ex parte Grant*, 711 So.2d 464, 465 (Ala. 1997) (citations omitted).

The Plaintiffs admitted that Kahlee Jenkins did not place an order from the menu or from the buffet.  (AF 39).  Based upon this admission, Plaintiff Kahlee Jenkins cannot show a valid contract between her and Western Sizzlin Oxford.  For this reason, the motion of Defendant Western Sizzlin Oxford for summary judgment on Jenkins' claim is due to be **GRANTED.**

With regard to the claims of the Plaintiffs other than Kahlee Jenkins, the Defendant does not dispute that a valid contract existed between the parties with regard to the meals purchased by the Plaintiffs.  The Defendant contends that because the Plaintiffs have failed to provide any evidence of damages, the Defendant is entitled to summary judgment.  The court does not agree.  Several of the Plaintiffs testified that they did not get to finish their meals.  Moreover, the Plaintiffs' "failure to submit evidence of damages is, alone, an insufficient basis for the summary judgment." *Brooks v. Franklin Primary Health Center, Inc.*, No. 2081039, ___ So.3d ____, 2010 WL 876711, at *3 (Ala. Civ. App. Mar. 12, 2010).  "'Alabama law provides for nominal damages if a breach of contract is proven, even if a breach-of-contract plaintiff cannot prove actual damages.'" *Brooks*, 2010 WL

876711, at *3, *quoting Jones v. Hamilton*, [Ms. 2081077, Jan. 22, 2010] ___ So.3d

____, ____ (Ala. Civ. App. 2010), *citing Knox Kershaw, Inc. v. Kershaw*, 552 So.2d

126, 128 (Ala. 1989) ('It is well settled, however, that once a breach of contract has

been established, as it was in this case, the nonbreaching party is entitled to nominal

damages even if there was a failure of proof regarding actual damages.') (other

citations omitted).   Therefore, the Plaintiffs (other than Kahlee Jenkins) have

provided evidence of damages and, even if they had not, the court may not grant

summary judgment on this basis.  For these reasons, the Defendant's motion for

summary judgment on Plaintiffs' breach of contract for their unfinished meals is due

to be **DENIED** as to all Plaintiffs other than Kahlee Jenkins.

> **B.     Contract for the Private Use of a Room:**

The Defendant contends that the Plaintiffs have failed to show the existence

of a contract for the use of a private room at Western Sizzlin Oxford.  According to

the Defendant, the Plaintiffs concede that no consideration was given for this alleged

contract because the Plaintiffs' position is that their only obligation under the contract

was to pay for their meals.  The Defendant claims that the Plaintiffs' offer to pay for

their meals does not constitute consideration for the private use of the room.

Therefore, there was no valid contract for the private use of the room.  The Defendant

also contends that the Plaintiffs did not suffer any damages for having to share the

room with other customers.

In their response, the Plaintiffs merely stated that "Plaintiffs created a contract for a private room and for a meal." (Pls.' Resp., doc. 32, p. 18). The Plaintiffs then state that contracts need not be in writing to be enforceable.

The Plaintiffs failed to provide any evidence supporting their contention that a valid contract existed between them and Western Sizzlin Oxford. In addition, the Plaintiffs failed to provide any evidence of consideration, and they have failed to provide any authority for the proposition that their agreement to buy meals also constitutes consideration for a contract for a private room. Because the Plaintiffs have failed to provide any evidence or authority as to this necessary element for the existence of a valid contract, the motion of Defendant Western Sizzlin Oxford for summary judgment is due to be **GRANTED** on this claim.

## VI. False Imprisonment Claims:

The Defendants contend that the Plaintiffs had a legal obligation to pay for their meals, even though the Plaintiffs did not want to walk to the cash register to pay their bills. In addition, the Defendants contend that Plaintiffs Scott, White, and Kahlee Jenkins cannot maintain claims of false imprisonment. According to the Defendants, Plaintiffs Scott and White prepaid for their meals and thus did not have to stand in line at the register to pay for their meals; instead, they were free to take

down decorations and pack the gifts and cake.  Plaintiff Kahlee Jenkins, who was nine months old at the time, did not order a meal and thus did not have to stand in line to pay.

The Plaintiffs contend that they "were falsely imprisoned, held there by armed police at the direction of Western Sizzlin employees and manager." (Pls.' Resp., doc. 32, p. 28).  They wanted to finish their meals but were not allowed to do so.  The Plaintiffs contend that they "were deprived of their liberty, their right to remain at their table and finish their meals."  (Pls.' Resp. doc. 32, p. 28).

"False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty."  Ala. Code § 6-5-170.  "However, under Alabama law an employer will not be held liable for false imprisonment for the acts of its employees in providing information to the police, which causes someone to be detained, if the employee's communications to the police were made in good faith."  *Crutcher v. Wendy's of North Alabama, Inc.*, 857 So.2d 82, 92 (Ala. 2003), *citing Crown Central Petroleum Corp. v. Williams*, 679 So.2d 651, 654 (Ala. 1996).

In this case, the Plaintiffs have not presented any evidence that tends to show that the report of a threat by the waitresses to the manager and the manager's subsequent call to the police to report a threat against him were not made in good

32

faith. *Crutcher*, 857 So.2d at 94.  For this reason, the motion of the Defendants for summary judgment is due to be **GRANTED** on the false imprisonment claim.

## VII.   Remaining Claims:

In their response to the Defendants' motion for summary judgment, the Plaintiffs did not respond to the arguments by the Defendants concerning the Plaintiffs' claims of negligent supervision and negligent training, libel, and intentional infliction of emotional distress.  Because the Plaintiffs failed to address these claims in their response, the Court finds that those claims have been abandoned. *Melton v. Nat'l Dairy LLC*, 705 F.Supp. 2d 1303, 1317 (M.D. Ala. 2010), *citing Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) (citations omitted) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *see also Robinson v. Regions Fin. Corp.*, 242 F.Supp.2d 1070, 1075 (M.D. Ala.2003) (Where Plaintiff's opposition to motion for summary judgment addresses only some claims, the remainder were deemed abandoned).

## <u>CONCLUSION</u>

For the reasons stated herein, the court finds that the Motion of the Defendants for Summary Judgment (doc. 28) is due to be **GRANTED** as follows:

1)      in favor of Defendants, Western Sizzlin Corporation and Investors

Management, LLC d/b/a Western Sizzlin Oxford, against Plaintiff Keaton Williams on all of the claims asserted by Keaton Williams;

2)     in favor of Defendants, Western Sizzlin Corporation and Investors Management, LLC d/b/a Western Sizzlin Oxford, against Plaintiff DeVion Smith on his claims under Title III of the ADA;

3)     in favor of Defendant, Western Sizzlin Corporation, against Plaintiffs Claudia Smith, LaCrysta Scott, Anitra S. Johnson, Shameka Tyus, Lakisha White, Vergena Richardson, Felecia Brown, Nichelle Smith, Jadi Montgomery, DeAnidra Burns, DeVion Smith, Keilynn Williams, Cierra Dobbins, Temecha Boseman, and Kahlee Jenkins, on their breach of contract claims;

4)     in favor of Defendants, Western Sizzlin Corporation and Investors Management, LLC d/b/a Western Sizzlin Oxford, against Plaintiffs Claudia Smith, LaCrysta Scott, Anitra S. Johnson, Shameka Tyus, Lakisha White, Vergena Richardson, Felecia Brown, Nichelle Smith, Jadi Montgomery, DeAnidra Burns, DeVion Smith, Keilynn Williams, Cierra Dobbins, Temecha Boseman, and Kahlee Jenkins, on their race discrimination claims pursuant 42 U.S.C. § 1981; false imprisonment claims; and claims of negligent supervision and negligent training, libel,

and intentional infliction of emotional distress;

5)      in favor of Defendant, Investors Management, LLC d/b/a Western Sizzlin Oxford, against Plaintiff Kahlee Jenkins on her breach of contract claim for an unfinished meal;

6)      in favor of Defendant, Investors Management, LLC d/b/a Western Sizzlin Oxford, against Plaintiffs Claudia Smith, LaCrysta Scott, Anitra S. Johnson, Shameka Tyus, Lakisha White, Vergena Richardson, Felecia Brown, Nichelle Smith, Jadi Montgomery, DeAnidra Burns, DeVion Smith, Keilynn Williams, Cierra Dobbins, Temecha Boseman, and Kahlee Jenkins, on their breach of contract claims regarding the use of a private room.

In addition, the Motion of the Defendants for Summary Judgment (doc. 28) is due to be **DENIED** on the breach of contract claims regarding unfinished meals by Plaintiffs Plaintiffs Claudia Smith, LaCrysta Scott, Anitra S. Johnson, Shameka Tyus, Lakisha White, Vergena Richardson, Felecia Brown, Nichelle Smith, Jadi Montgomery, DeAnidra Burns, DeVion Smith, Keilynn Williams, Cierra Dobbins, and Temecha Boseman, against Defendant Western Sizzlin Oxford.

A separate Order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 28th day of October, 2010.


VIRGINIA EMERSON HOPKINS
United States District Judge